RENE L. VALLADARES
Federal Public Defender
State Bar No. 11479
BRANDON C. JAROCH
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Brandon_Jaroch@fd.org

Attorney for Demetrius Ware

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DEMETRIUS WARE,<br><br>　　　　Defendant. | Case No. 2:20-cr-00029-RFB-BNW<br><br>**Mr. Ware's Sentencing Memorandum** |

　　Certification: This Sentencing Memorandum is timely filed.

　　Defendant Demetrius Ware, by and through his counsel of record, Assistant Federal Public Defender Brandon C. Jaroch, submits his Sentencing Memorandum for the Court's consideration in fashioning a sentence that is "sufficient, but not greater than necessary" to meet the sentencing goals in 18 U.S.C. § 3553(a).  Mr. Ware reserves the right to supplement this memorandum

with additional authorities or information as the Court may permit on or before the sentencing hearing presently scheduled for January 14, 2021, at 2:30 p.m.

DATED this 7th day of January, 2021.

                        RENE L. VALLADARES
                        Federal Public Defender

By: */s/ Brandon C. Jaroch*
     BRANDON C. JAROCH
     Assistant Federal Public Defender
     Attorney for Demetrius Ware

## I. BACKGROUND

On February 19, 2020, Mr. Ware was charged with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and Possession of a Firearm on School Property, in violation of 18 U.S.C. § 922(q)(2)(A) and 18 U.S.C. § 922(a)(4).[1]  Mr. Ware accepted responsibility for his actions and pled guilty, pursuant to a written plea agreement, to the charged offenses.[2]  Sentencing is set for January 14, 2021, at 2:30 p.m.[3]

## II. PSR CALCULATON

The Office of Probation has prepared a Presentence Investigation Report (PSR).  The PSR calculates Mr. Ware's base offense level at 14.[4]  The PSR noted there are no enhancements.[5]  The PSR also did not include any reduction for acceptance of responsibility.[6]  The PSR calculated the total offense level at 14.[7]  The PSR calculated that Mr. Ware's criminal history score at nine and with a Criminal History Category of IV.[8]  The PSR calculated the corresponding guideline range to be 27 – 33 months and recommended a low-end guideline

---

[1] ECF No. 1.
[2] ECF No. 34.
[3] *Id*.
[4] PSR ¶ 23.
[5] PSR ¶ 29.
[6] PSR ¶ 30.
[7] PSR ¶ 31.
[8] PSR ¶ 45.

sentence of 27 months—21 months for Count One and six months for Count Two.[9] The PSR notes that the plea agreement does not comport with its recommendation because the parties will recommend a 2-level reduction for acceptance of responsibility.[10]

### III. MR. WARE RESPECTFULLY REQUESTS THIS COURT SENTENCE HIM TO TIME SERVED.

#### A. A sentence of time served is sufficient but not greater than necessary to comply with the factors in 18 U.S.C. § 3553.

A sentence of time served is a just and reasonable sentence pursuant to the Supreme Court's mandate in *United States v. Booker*, 543 U.S. 220, 245, 259-60 (2005). In *Booker*, the Supreme Court found that sentencing courts must consider the factors in 18 U.S.C. § 3553(a) in addition to the Guidelines range, which is no longer mandatory but rather merely advisory.[11] As mentioned above, section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary:"

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

---

[9] PSR ¶ 105.

[10] PSR ¶¶ 4 & 83.

[11] *Id.*; 18 U.S.C. § 3553(a) (2010).

4

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(2018).

18 U.S.C. § 3553(a) further directs sentencing courts to consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, among other factors. The factors listed in section 3553(a) support a sentence of time served in this case.

**1. The nature and circumstances of the offense as well as Mr. Ware's history and characteristics support a sentence of time served.**

Mr. Ware is deeply remorseful for his actions. He admittedly possessed a firearm on December 11, 2019, knowing that he was legally prohibited from doing so.[12] Mr. Ware's possession of the firearm is undoubtedly a serious crime. He regrets the decision he made to have a firearm. Importantly, Mr. Ware did not use the firearm to physically injure anyone.[13] Nor did he use the firearm to illegally traffic drugs or commit any crimes of violence. As evidenced by the provided discovery including surveillance videos, Mr. Ware made the extremely

---

[12] ECF No. 47 & 48.

[13] *Id.*

poor decision to essentially open carry a firearm when trying to be a good father and drop his children off at school.  This decision was not born of malice or aggression but rather of fear and paternal instinct to protect one's kids.  His children were scared to walk to and from school thinking they were being followed and Mr. Ware simply wanted to protect and comfort them on their journey.  He deeply regrets putting his family, and the all the children and faculty, at risk by carrying a firearm, but as someone who was the victim of a random act of violence as explained later in this memorandum, his paternal character took over for common sense.

Mr. Ware is 28-year-old man whose life has been marked with the tragedy and misfortune like so many other defendants that have appeared before this Court.  Mr. Ware's childhood, though described as "good" by him, involved the lack of a father figure and moving between California, Oregon, and Nevada, routinely upending any stability or structure in place.[14]  Although they have reconciled now, Mr. Ware's father preferred a life on the street rather than a life at home with his young children. [15]  This created a void in Mr. Ware's life that he is just now starting to comprehend.  Mr. Ware was raised by his grandmother Dorthey Smallwood, mother Veniete Wooden, and aunt Leontaynae Wooden, who

---

[14] PSR ¶ 53.
[15] PSR ¶ 52.

6

he was very close with.[16] The death of his aunt was "devastating" to him, which caused him to engage in "negative behaviors."[17] This is not surprising when a major stability factor in a young man's life is suddenly removed. Mr. Ware explains that Ms. Wooden was the "bread winner" for the family at the time of her death in 2008—seven days before Mr. Ware's sixteenth birthday. Her passing came as the result of a stroke at the age of 35. Mr. Ware was traveling with Ms. Wooden, who was driving him, his mother, his brother, and two of Ms. Wooden's children from California to Las Vegas. Ms. Wooden suffered the stroke while driving but was able to make it all the way to Las Vegas before immediately being taken to the hospital where she ultimately succumbed to complications from the stroke. Mr. Ware's mother was now responsible for her children and those of her sister. A task that she was mentally, emotionally, and financially unprepared for. As a result, Mr. Ware lashed out and sought support and admiration from criminal elements. This lifestyle provided Mr. Ware with several missing pieces from his life. It provided him with male role models or so Mr. Ware thought. Mr. Ware recognizes now that that support and admiration is fleeting and something he no longer needs in his life.

---

[16] *See* Ex. A, Family and friend character letters.
[17] PSR ¶ 54.

It does not take long when speaking with Mr. Ware to realize he is a thoughtful, caring, and genuinely sincere person. While his record belies this, he is not the man that is summed up by his criminal past. He wants to be better for himself and his children. For all the negative aspects in his life, Mr. Ware does have a solid bedrock to build a future on—her name is Fitima Hooper. Ms. Hooper has been with Mr. Ware going on nine years.[18] Ms. Hooper has been with Mr. Ware every step of the way during these federal proceedings even scolding counsel sometimes for not admonishing Mr. Ware more thoroughly for his actions that led to his current incarceration. She too though is humble, sincere, and wants nothing more to have Mr. Ware back in their home. Through all his faults, Ms. Hooper has stood with him and they retain an extremely close relationship. They share two children together, with one being born while Mr. Ware was in custody for violating the terms of his pretrial release.[19] Mr. Ware's son has severe asthma and his newborn daughter has traits for sickle cell disease.[20] Mr. Ware has been a father figure for Ms. Hooper's two other children and hopes to regain that role as soon as possible.[21] Mr. Ware has missed the birth of his

---

[18] PSR ¶ 55.
[19] PSR ¶ 56.
[20] PSR ¶ 58.
[21] PSR ¶ 57.

daughter but does not wish to miss any more birthdays, holidays, or Christmases with his family.

In discussing his children, Mr. Ware inevitably becomes emotional. It seems that he is transported back in time to that child that grew up without a father and fears exposing his children to that same fate. Only time will tell, but Mr. Ware is adamant that his criminal life is behind him. Mr. Ware has been in continuous federal custody going on six months now.[22] He also spent over two months in state custody on this same change before it was taken federally.[23] Mr. Ware knows that every day he has spent away from his family is due to his choices. There is no one to blame but himself, which he does all day, every day while in custody.

Mr. Ware has never really dealt with his grief. Mr. Ware started to when he was actively engaged in counseling.[24] Mr. Ware enjoyed counseling and is looking forward to starting that process again. It has beneficial for Mr. Ware to talk to someone about the loss of his aunt and the random act of violence that resulted in him being shot in the hip.[25] As Mr. Ware explains, in 2011 he was working at a tattoo shop and was on a break outside when a person opened fire in

---

[22] PSR ¶ 11.
[23] PSR ¶ 6.
[24] PSR ¶ 67.
[25] PSR ¶ 66.

9

the direction of his job. He was close to the shooter and was struck in the hip with the bullet exiting and inch from his spine. Mr. Ware was paralyzed from the waist down for two weeks, spent two months in the hospital, and had to learn to walk again. With bullet fragments still inside his body, he is reminded of this shooting every time his back hurts from strain or there is a random loud noise that jerks him back to the day of the shooting. That incident of violence also brought Mr. Ware and his family to Las Vegas from California to try and remove themselves from such a turbulent environment.

Mr. Ware understands that he can make his and his family's dreams come true so long as he remains focused, he participates in available treatment programs to learn to address his grief, and he abides by the law. A sentence of time served appropriately reflects the nature and circumstances of Mr. Ware possession of the firearm as well as his history and characteristics and, with probation's help, will start him down the path of being a productive member of his community.

**2. A time served sentence is also appropriate for confinement conditions while Mr. Ware has been detained.**

Mr. Ware has been detained in the Nevada Southern Detention Center continuously since July, 2020.[26] There, Mr. Ware has been working as a porter and gained a promotion for his hard work. Mr. Ware has been focused on

---

[26] PSR ¶ 11.

restarting his counseling with Choices, looking into joining a union when released, and would like to participate in the Hope for Prisoner's program. His time in custody has not been wasted.

It has also not been easy. With the COVID-19 pandemic in full force, Mr. Ware has been subject to quarantine, isolation, and the virus itself. Mr. Ware's "celly" in early October was Brandon Patton.[27] Mr. Ware was on the top bunk and Mr. Patton was on the bottom bunk so he could have access to the outlet for his sleep apnea device. As the facility was being inspected in late 2020, different units were being ushered into and out of the intake area, where he believes he, along with Mr. Patton, were exposed to the virus due to inadequate cleaning between movements. Mr. Ware suffered with the virus for a week, unable to get out of his bunk, extremely sick with labored breathing and no sense of smell or taste. He eventually recovered. Mr. Patton, who Mr. Ware tried to comfort and assist until he was removed from the facility for emergency care, did not and died of COVID related complications at the age of 29.[28] Knowing a friend, that he was just caring for days earlier, died from the same virus he was suffering from was an absolutely terrifying experience for Mr. Ware. "Am I going to die alone

---

[27] *United States v. Brandon Patton*, 2:19-cr-00209-APG-EJY, ECF No. 54; https://www.reviewjournal.com/local/local-nevada/prisoner-at-pahrump-facility-1st-known-inmate-in-nevada-to-die-of-coronavirus-2145165/.

[28] *Id.*

11

without seeing my family" was a recurring thought that echoed in Mr. Ware's mind as he lay sick. Since his recovery, Mr. Ware was moved from his unit into a new unit where every person assigned is COVID-19 positive. While recovered and apparently under the belief by the facility that he cannot be reinfected, Mr. Ware spends almost every day surrounded by other inmates infected with the virus. As expected, this experience has had a shocking and lasting impact on Mr. Ware's commitment to never to return to jail.

### B. Contrary to the Probation Officer's Recommendation, Mr. Ware is entitled to the acceptance of responsibility reduction.

The commentary to § 3E1.1 of the U.S. Sentencing Guidelines makes clear that "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right,"[29] The commentary also specifically directs courts to consider whether a defendant "truthfully admit[s] the conduct comprising the offense(s) of conviction," U.S.S.G. § 3E1.1 App. note 1(A), and it further states that "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct ... will constitute significant evidence of acceptance of responsibility."[30]

---

[29] U.S.S.G. § 3E1.1 App. note 3.

[30] *Id.*

Mr. Ware has unequivocally accepted responsibility in this case. While Mr. Ware was convicted a new crime while on pretrial release,[31] he took responsibility for the state charge,[32] served his time, and was then taken back into federal custody. There, he took responsibility for his pretrial release violations[33] and entered into a plea agreement where he pled guilty to both counts listed in the criminal indictment.[34] In entering into the plea agreement after he was released by the state, the parties have stipulated that he should receive the acceptance of responsibility reduction.[35] The plea agreement makes clear that "[t]he stipulated sentencing guideline calculations are based on information now known to the parties."[36] The government was aware of the new state law violations at the time the parties entered into the agreement—signed in September and filed in October of 2020—and is the only basis the probation officer recommends against it. Therefore, as the parties have contemplated and stipulated, Mr. Ware requests the Court grant the acceptance of responsibility reduction.

---

[31] PSR ¶ 42.
[32] *Id.*
[33] ECF No. 38.
[34] ECF No. 1 & 47.
[35] ECF Np. 47 & 48
[36] ECF No. 48, pg. 10, lines 10-11.

## IV. CONCLUSION

For the reasons discussed above, Mr. Ware respectfully requests that this Court, considering the Guidelines, law, and all sentencing factors under 18 U.S.C. § 3553(a), sentence him to time served. Mr. Ware will also be subject to three years of supervised release, which this Court could impose a period of home confinement as a condition. This would allow Mr. Ware to assist with raising his children, remove him from a facility overrun with COVID-19, and keep him under more scrutiny by probation. This sentence is sufficient but not greater than necessary given the facts and circumstances related to the federal charges for which he has pled.

While acknowledging Mr. Ware's desire to not associate with known gang members or felons, Mr. Ware renews his objection to the no gang affiliation condition as part of his supervision.

DATED this 7th day of January, 2020.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

By: */s/ Brandon C. Jaroch*
BRANDON C. JAROCH
Assistant Federal Public Defender
Attorney for Demetrius Ware

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that he is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on January 7, 2021, he served an electronic copy of the above and foregoing **Mr. Ware's Sentencing Memorandum** by electronic service to the person named below:

> NICHOLAS TRUTANICH
> United States Attorney
> BRETT RUFF
> Assistant United States Attorney
> 501 Las Vegas Blvd. South
> Suite 1100
> Las Vegas, Nevada 89101

*/s/ Marcus A. Walker*
Employee of the Federal Public Defender